{¶ 40} I disagree. It is undisputed that the "cognizable event" and "discovery of the injury" occurred on April 30, 2001, when Mr. Shade was admitted to MVH due to hemorrhaging. It is equally clear that Dr. Bleser did not continue to treat, advise, prescribe or provide care for the deep vein thrombosis/hemorrhage after April 30, 2001. I would hold that the one-year statute of limitations period began to run when Dr. Bleser surrendered supervision to the specialists in the hospital on April 30, 2001.
 {¶ 41} Dr. Bleser is a sole family practitioner who turned over the care of his patient to the specialists at the hospital. Dr. Bleser did not visit, did not prescribe and did not consult with the specialists at the hospital. After April 30, 2001, Dr. Bleser was not involved in Mr. Shade's care. It is wholly irrelevant what would have occurred had Mr. Shade survived.
 {¶ 42} As noted by the majority, in Kiser, we recognized the termination rule "may operate to extend the time of accrual of the cause of action beyond the `cognizable event' when the professional relationship for the condition remains active." Thus, our inquiry should focus on the language, "when the professional relationship for the condition remains active." Herein, the "condition" is the failure to monitor the deep vein thrombosis that led to hemorrhaging. After April 30, 2001, there was no active professional relationship between Dr. Bleser and Mr. Shade for that "condition." Mr. Shade was entirely under the care of MVH and V.A. doctors until his death. Dr. Bleser did not assume any role in Mr. Shade's care, much less one that could be deemed "active." This case is more akin to the facts in Adams v.VanWert County Hospital, 2005-Ohio-3078, wherein summary judgment was affirmed after the primary care physician surrendered care to a specialist.
 {¶ 43} Dr. Bleser did not consult with the hospital physicians nor did he render treatment to alleviate the effects of his own alleged negligence as, for example, a surgeon may do. An expectation by Mr. Mrs. Shade that Dr. Bleser would continue as their family physician upon Mr. Shade's discharge never came to fruition. In order to extend the one-year statute of limitations, there must be evidence of an on-going relationship. The record in this case reveals Dr. Bleser did not accept any ongoing responsibility for Mr. Shade's care after his second admission to MVH on April 30, 2001. There was no continuing course of treatment by Dr. Bleser after April 30, 2001. As noted by the trial court, this case "presents a situation where there is no continuation of the physician-patient relationship as contemplated by the termination rule."
 {¶ 44} The purpose and goal of the termination rule as promulgated in Frysinger and Ishler do not come into play under the facts of this case. Once Mr. Shade was hospitalized on April 30, 2001 until July 16, 2001, he did not rely on Dr. Bleser's ability to provide full treatment and correct any errors in judgment. Mr. Shade's care and illness were supervised by physicians at two hospitals and all communication between Mr. Shade and Dr. Bleser had ceased and never resumed due to Mr. Shade's death.
 {¶ 45} I am unpersuaded that sending reports to Dr. Bleser constitutes an active relationship. There is no evidence that Dr. Bleser discussed Mr. Shade's care with the treating physicians, visited the patient, or continued issuing prescriptions. I would view it differently had any of these things occurred. Likewise, I am unpersuaded a diabetes study letter sent after Mr. Shade's death constitutes evidence of a relationship. A relationship is built on communication, care and trust, thus cannot exist after a patient's death.
 {¶ 46} I would affirm the trial court's grant of summary judgment.